

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**06/05/2014**

| | | |
|---|---|---|
| IN RE: | § | |
| DAVID MCLAWCHLIN; dba | § | CASE NO: 13-37887 |
| MCLAWCHLIN FARMS | § | |
| Debtor(s) | § | |
| | § | CHAPTER  12 |

## MEMORANDUM OPINION

On December 30, 2013, David McLawchlin filed a chapter 12 bankruptcy petition. (ECF No. 1).  On January 28, 2014, the Trustee filed a motion to dismiss or convert on the basis that Mr. McLawchlin is ineligible for chapter 12 relief under 11 U.S.C. §109(f).  (ECF No. 11).

For the reasons set forth in this Opinion, the Court finds that Mr. McLawchlin is not eligible for chapter 12 relief.  Mr. McLawchlin will be given the opportunity to convert his case to one under chapter 13.  If he does not do so, the case will be dismissed.

### Background

The Court held a hearing on March 20, 2014.  Mr. McLawchlin testified that he was a rice farmer from 1976 until 2010, when he became disabled.  In his Statement of Financial Affairs, Mr. McLawchlin listed that his sole income for tax years 2011 and 2013 was from Social Security benefits ($19,654.89 in 2011 and $20,710.80 in 2013). (ECF No. 8 at 24).  In 2012, he listed that his income consisted of $20,362.80 from Social Security benefits and $30,668.04 from "Rice Farmer Litigation Settlement." (ECF No. 8 at 24). This is consistent with Mr. McLawchlin's 2012 tax return.

At the hearing, Mr. McLawchlin explained that he was a plaintiff in a class action lawsuit against Bayer CropScience.  In 2012, he received settlement proceeds from Bayer CropScience

in the amount of $30,668.04.  This amount was to compensate Mr. McLawchlin for crop losses he sustained during 2006, 2007, and 2008.

Mr. McLawchlin testified that his present farming activity is limited to baling hay.  He stated that he does not sell any of the hay—he gives it away to his sister and friends for free.  Mr. McLawchlin has not expressed any interest in pursuing farming activities on his land.  His sole source of income is his social security benefits.

### Chapter 12 Eligibility

Pursuant to 11 U.S.C. §109(f), "Only a family farmer or family fisherman with regular annual income may be a debtor under chapter 12 of this title." Chapter 12 of the Bankruptcy Code provides for the adjustment of debts of a "family farmer" or a "family fisherman" as those terms are defined in the Bankruptcy Code.  The relevant parts of Section 101(18) state:

> The term "family farmer" means— "individual… *engaged in a farming operation* whose aggregate debts do not exceed $4,031,575 and not less than 50 percent of whose aggregate noncontingent, liquidated debts… on the date the case is filed, arise out of a farming operation… and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for (i) the taxable year preceding [the date the case was filed], or (ii) each of the 2d and 3d taxable years preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.

11 U.S.C. § 101(18).  Section 101(19) states that "[t]he term 'family farmer with regular income' means family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a plan under chapter 12 of this title." 11 U.S.C. § 101(19).  Section 101(21) states that "the term 'farming operation' includes farming, tillage of soil, dairy farming, ranching, production or raising of crops, poultry, or livestock and production of poultry or livestock products in an unmanufactured state." 11 U.S.C. § 101(21).

Accordingly, to be a "family farmer" eligible to file a chapter 12 petition, a debtor must be: (1) an individual; (2) with aggregate debts of $4,031,575 or less; (3) engaged in a "farming operation;" (4) have at least 50% of his aggregate, noncontingent liquidated debts arising out of a farming operation; (5) receive more than 50% of his gross income from such operation; and (6) have annual income sufficiently stable and regular to make payments under a Chapter 12 plan. *See In re Poe*, 2009 WL 2357160 (Bankr. N.D. W. Va. 2009).

### Analysis

In determining whether Mr. McLawchlin qualifies for relief under chapter 12, the Court must address several questions: (i) Does Mr. McLawchlin satisfy the debt and income requirements under § 101(18)? (ii) Is Mr. McLawchlin "engaged in a farming operation"? (iii) Is Mr. McLawchlin's Social Security income "sufficiently stable and regular to enable such family farmer to make payments under a plan under chapter 12 of this title?"

### Debt and Income Requirements Under § 101(18)

At the hearing, Mr. McLawchlin established that his farm debts totaled at least $192,844.00.[1]  The testimony is uncontroverted.  Accordingly, he satisfies the debt requirement under § 101(18).

To be eligible for relief under chapter 12, Mr. McLawchlin must establish that "not less than 50 percent of [his] aggregate noncontingent, liquidated debts… arise out of a farming operation." 11 U.S.C. § 101(18). Mr. McLawchlin's schedules indicate that his debt totals $363,851.00. Therefore, he must show that at least $181,925.50 of that amount arises out of his previous farming operation.

---

[1] Mr. McLawchlin and his attorney went through each of the debts listed on Schedule F to explain which debts were farm related, non-farm related, and which he was uncertain about. The $192,844.00 figure is the sum of all the debts that he was certain were farm related debts.

An individual must also have received more than 50 percent of his gross income from the 'farming operation' owned by that individual for either (i) the taxable year preceding; or (ii) each of the 2nd and 3rd taxable years preceding the taxable year in which the case concerning the individual was filed.  Mr. McLawchlin filed his chapter 12 petition on December 30, 2013.  Mr. McLawchlin's 2012 tax return indicates that he had two sources of income: (i) $20,362.80 from Social Security benefits and (ii) a $30,668.04 litigation settlement payment from Bayer CropScience.

The issue is whether the $30,668.04 settlement payment, which represents compensation for farming activities that occurred during the years 2006-2008, constitutes "gross income" received from a farming operation.  The Court holds that it does.

Most courts follow the Seventh Circuit' decision in *In re Wagner*, which is to import the Federal Tax Code definition of "gross income" when determining whether the "farm income" test of section 101(18)(A) is met. *In re Wagner,* 808 F.2d 542, 549 (7th Cir. 1986); *See also In re Lewis,* 401 B.R. 431, 441 (Bankr. C.D. Cal. 2009); *In re King,* 272 B.R. 281, 293 (Bankr. N.D. Okla. 2002); *In re Gregerson,* 269 B.R. 36, 40 (Bankr. N.D. Iowa 2001) ("Courts have used the tax law meaning of 'gross income' in making chapter 12 eligibility decisions."); *In re Lamb,* 209 B.R. 759, 760–61 (Bankr. M.D. Ga. 1997)("Congress intended the term 'gross income' to have its ordinary Tax Code meaning."); *In re Fogle,* 87 B.R. 493, 496 (Bankr. N.D. Ohio 1988); *In re Pratt,* 78 B.R. 277, 279 (Bankr. D. Mont. 1987); *In re Faber,* 78 B.R. 934, 935 (Bankr. S.D. Iowa 1987); *In re Schafroth,* 81 B.R. 509 (Bankr. S.D. Iowa 1987).

In fact, many courts rely exclusively on the debtor's tax return to determine whether the income test is met. *See In re Gregerson,* 269 B.R. 36, 40 (Bankr. N.D. Iowa 2001)("Indeed, in

determining eligibility for chapter 12, some courts have refused to consider anything besides the debtor's tax return."); *see also In re Bergmann,* 78 B.R. 911, 912 (Bankr. S.D. Ill. 1987); *In re Nelson,* 73 B.R. 363, 365 (Bankr. D. Kan. 1987)("Section 101(17) is clear on its face that only *income* from the preceding taxable year is to be considered in determining whether debtors must meet the definition of family farmer. Under that definition, ***this Court has neither the power nor the inclination to delve beyond the face of debtors' income tax returns.***").

Many courts liberally apply the income test.  For example, in *In re Wagner,* the court held that "[t]he court does not believe that farmers forced to partially liquidate assets or temporarily rent out machinery or farmland, in an effort to salvage their farm operation, should be foreclosed from seeking relief under Chapter 12, if such actions cause the 50% farm income test not to be met.").

Although this Court does not necessarily subscribe to these views, Mr. McLawchlin's 2012 tax return shows that more than 50% of his gross income arose from his farming operation. His tax return shows two sources of income for 2012: (i) $20,362.80 from Social Security benefits and (ii) a $30,668.04 litigation settlement payment from Bayer CropScience.  Under the Tax Code, the litigation settlement proceeds became income in the year in which they were received. *See Espinoza v. C.I.R.*, 636 F.3d 747, 749-50 (5th Cir. 2011)("Gross income includes all income "from whatever source derived" except as otherwise provided by the Internal Revenue Code. ").

The settlement proceeds resulted from Mr. McLawchlin's farming operations in prior years.  The Court finds that the income qualifies as farming income in 2012.

The Trustee argues that Mr. McLawchlin does not meet the income requirement because the $30,668.04 relates back to farming activities during the 2006 to 2008 time period.  The Court

rejects this argument.  The plain language of the statute requires that the individual "***receive*** from such farming operation for more than 50 percent" of such individual's "gross income for the taxable year preceding…"  The statute does not require that Mr. McLawchlin ***earn*** the income during the taxable year preceding.  Although the settlement payment arises from the rice farming operation he ran in previous years, he ***received*** the income in 2012.  Mr. McLawchlin's 2012 tax return demonstrates that this $30,668.04 payment exceeds 50 percent of his gross income ($51,030.84).  Accordingly, Mr. McLawchlin satisfies the income requirement under § 101(18).

### "Engaged in a Farming Operation" Requirement

To be eligible for relief, an individual must be "engaged in a farming operation" at the time the Chapter 12 petition is filed.  *In re Watford*, 898 F.2d 1525 (11th Cir. 1990).  Most courts have broadly interpreted this requirement.  *Id*. at 1527 ("This definition is to be construed liberally in order to further Congress' purpose of helping family farmers to continue farming.").  The list in the statutory definition of 'farming operation' is not intended to be all-inclusive list due to the need to capture the ever-expanding range of farming activity in modern years. *Id*; s*ee also In re Maike*, 77 B.R. 832 (Bankr. D. Kan. 1987).  In *In re Sandifer*, the court explained that "[t]he definitions of 'family farmer' and 'farming operation' are to prevent those individuals who are obviously non-farmers from receiving the benefits of farming legislation.... [The debtor] should receive those benefits if he can demonstrate that he has **an active farming history; and his conduct reveals an intent to salvage his farm for future use**..." *In re Sandifer*, 448 B.R. 382, 387 (Bankr. D.S.C. 2011).  Accordingly, some courts have held that a debtor may qualify for chapter 12 by demonstrating an active history of farming coupled with the intention of future farming.

**Totality of the Circumstances**

Two main standards have evolved for determining whether an individual is "engaged in a farming operation." In *In re Armstrong*, the Seventh Circuit interpreted section 101(18) to mean that only those farmers whose activities "were exposed to the ***inherent risks and cyclical uncertainties traditionally associated with farming***" were protected from involuntary Chapter 11 proceedings. *Armstrong v. Corn Belt Bank*, 812 F.2d 1024, 1027 (7th Cir. 1987).

A majority of courts have rejected *Armstrong's* rigid standard, and instead apply the Eleventh Circuit's "totality of the circumstances" test to determine whether the debtor ***intends to continue to engage in a 'farming operation'*** at the time the petition was filed (even if he or she was not engaged in farming activity at the time the petition was filed). *In re Watford*, 898 F.2d 1525 (11th Cir. 1990). This test considers the following factors: (i) whether the location of the operation would be considered a traditional farm, such as a rural area, (ii) the nature of the enterprise at the location, such as whether a service or product is being provided, (iii) the type of product and its eventual market, such as whether it is traditionally agricultural though this is not strictly limiting, (iv) the physical presence of family members on the farm, (v) ownership of traditional farm assets, (vi) whether the debtor is involved in the process of growing or developing crops or livestock, and (vii) perhaps the key factor being whether or not the practice or operation is subject to the inherent risks of farming. *Id; see also In re Maike*, 77 B.R. 832 (Bankr. D. Kan. 1987); *In re Sugar Pine Ranch*, 100 B.R. 28 (Bankr. D. Or. 1989); *In re Mikkelson Farms, Inc.,* 74 B.R. 280 (Bankr. D. Or. 1987).

In *In re Watford*, the issue was whether the activity of storing and maintaining soybeans while awaiting sale was enough to constitute a 'farming operation.' *In re Watford*, 92 B.R. 557 (M.D. Ga. 1988). Relying on the factors from the totality of the circumstances test, the

bankruptcy court found that the storage and maintenance of crops alone was not found to be a 'farming operation' because it was exclusive from other farming operations contemplated by the statutory definition of 'farming operations,' such as tillage of the soil. *Id.* On appeal, the Eleventh Circuit found that the legal standard used was incorrect and stated that the more relevant test here was whether the Debtors *planned to continue farming operations* or whether all farming operations were wholly abandoned. *In re Watford*, 898 F.2d 1525 (11th Cir. 1990). The Eleventh Circuit suggested that if the Debtors stored and maintained soybeans with the intention of reorganizing the farming operation, this would constitute present engagement in a 'farming operation.' *Id; see also In re Paul*, 83 B.R. 709 (Bankr. D. N.D. 1988); *In re Burke*, 81 B.R. 971 (Bankr. S.D. Iowa 1987).

Under the "totality of the circumstances" test, Mr. McLawchlin is not engaged in a farming operation. Only two of the seven factors support eligibility for chapter 12: (i) Mr. McLawchlin's land is in a location that would be considered a traditional farm (because it was previously used as a rice farm for 34 years) and (ii) he owns traditional farm assets, such as a tractor. The remaining five factors favor dismissal of the chapter 12 case. None of Mr. McLawchlin's family members reside on the farmland. He is not involved in the process of growing or developing crops or livestock and he does not provide any service or product (he bales hay and gives it to his sister and friends for no charge). Most importantly, Mr. McLawchlin is not subject to the inherent risks of farming.

### Subject to the Inherent Risks of Farming

Most courts that apply the "totality of the circumstances" test agree that this is the most important factor. Some courts have adopted a very narrow meaning of "the inherent risks of farming." For example, in *In re Poe*, the court held that the debtors' raising horse for livestock

constituted a "farming operation" while the debtors' horse boarding and training activities did not constitute a "farming operation" as defined by § 101(21). *In re Poe*, 2009 WL 2357160 (Bankr. N.D.W. Va. 2009). The court explained that "the distinction is that, in raising horses for livestock, the 'family farmer bears all risks." *Id.*

The Eleventh Circuit has adopted a broader meaning by considering the debtor's intent (or lack thereof) to continue farming operations in the future. *In re Watford*, 898 F.2d 1525, 1529 (11th Cir. 1990)("[W]e vacate the judgment below in this regard and remand for a determination of whether the Watfords *had abandoned all farming operations at the time of the filing*, or whether under the totality of the circumstances the Watfords had not abandoned all farming operations, but rather *were planning to continue farming operations* in the form of commercial fish ponds or otherwise.").

Mr. McLawchlin's current activities are limited to baling hay and providing it free of charge to his sister and friends. However, Mr. McLawchlin was a rice farmer for 34 years (until he became disabled in 2010). Following the Eleventh Circuit's logic in *In re Watford*, Mr. McLawchlin might have qualified for chapter 12 relief if he had demonstrated that he intended to salvage his previous rice farming operation, or that he otherwise intended to engage in a farming operation in the future. Mr. McLawchlin has not made such a showing.

Mr. McLawchlin has not expressed any intention of salvaging his rice farming operation or otherwise engaging in a farming operation in the future. When asked what the purpose of his chapter 12 filing was, he stated that it was simply to get out of debt. His attorney explained that the rationale behind filing for chapter 12 instead of chapter 13 had to do with a "complicated homestead issue." While the Court appreciates counsel's strategic planning, Mr. McLawchlin

cannot be eligible for chapter 12 relief without having any intention of engaging in a farming operation.

Mr. McLawchlin is not and will not be subject to the inherent risks of farming. He has not farmed on his land for over three years and has not expressed any intention of engaging in any farming activity. Schedule I states that his sole source of income is a monthly $1,536.00 social security payment. (ECF No. 8 at 20). Mr. McLawchlin's chapter 12 Plan indicates that he will rely on "family member contributions" to make his plan payments. (ECF No. 17 at 2). His reasons for filing a chapter 12 petition do not further the primary purpose of chapter 12, which is to *continue* farming. *In re Tart*, 73 B.R. 78 (Bankr. E.D. N.C. 1987). Accordingly, Mr. McLawchlin is not eligible for relief under chapter 12.

## Family Farmer with Regular Income Under § 101(19)

This issue is now moot based on Mr. McLawchlin's failure to satisfy the requirement that he be engaged (or intends to be engaged) in farming.

## Conversion from Chapter 12 to Chapter 13

At the hearing, counsel for Mr. McLawchlin requested the opportunity to have the case converted to chapter 13 in the event that the Court decides that Mr. McLawchlin is not eligible for chapter 12. Based on the language of section 1208(a), an issue arises as to whether a chapter 12 debtor may convert to a chapter other than chapter 7 of the Code.[2] Courts are split on this issue. *In re Vantiger-Witte*, 2007 WL 3287105 (Bankr. N.D. Iowa Nov. 6, 2007).

Section 1208(a) of the Bankruptcy Code provides Mr. McLawchlin with the right to convert his case under chapter 12 to one under chapter 7. 11 U.S.C. § 1208 ("The debtor may

---

[2] Notably, conversion from Chapter 12 to Chapter 13 is contemplated in § 1307(b), which states: "(b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable."

convert a case under this chapter to a case under chapter 7 of this title at any time."). Section 706(c) of the Code provides the Court with the discretion to convert a case under chapter 7 to a case under chapter 13, provided that the debtor requests or consents to such a conversion. 11 U.S.C. § 706(c)("The court may not convert a case under this chapter to a case under chapter 12 or 13 of this title unless the debtor requests or consents to such conversion."); *See* 7 *Collier on Bankruptcy* ¶ 706.04 (16th ed. 2010)("Both sections 706(b) and 706(c) refer to a decision of the court, in its discretion, to permit conversion at the request of a party. Section 706(c) serves simply to limit who may request a conversion to chapter 12 or chapter 13, permitting only the debtor to make such a request."). Accordingly, Mr. McLawchlin has the right to (i) convert his case under chapter 12 to one under chapter 7; and (ii) file a motion requesting that the Court exercise its discretion to convert his chapter 7 case to one under chapter 13. Nothing would be accomplished by requiring Mr. McLawchlin to file two separate conversion motions (one from chapter 12 to chapter 7 and another from chapter 7 to chapter 13). In order to avoid this unnecessary two-step process, the Court will allow Mr. McLawchlin to file a motion to have his case under chapter 12 converted to a case under chapter 13.

A majority of courts considering this issue allow conversion from Chapter 12 to chapters other than Chapter 7 "where the debtor has filed in good faith, there is no prejudice to the creditors, and such conversion would be equitable." *In re Miller,* 177 B.R. 551, 553 (Bankr. N.D. Ohio 1994); *In re Gregorson,* 269 B.R. 36, 39 (Bankr. N.D. Iowa 2001)(citing *Miller;* assuming without deciding that a debtor may convert from chapter 12 to chapter 11).

The leading case is *In re Orr*, where the court noted that there may be situations when such conversion would not be unfair to creditors or where denial of conversion would be inequitable to the debtor. *In re Orr*, 71 B.R. 639, 642 (Bankr. E.D. N.C. 1987). In that case, the

court held that "[w]here a petitioner files for relief under chapter 12 but does not qualify pursuant to 11 U.S.C. § 109(f) for relief under chapter 12, the court may in its discretion permit conversion to chapter 11 where the chapter 12 petition was filed in good faith, creditors will not be prejudiced by the conversion, and conversion would not be otherwise inequitable." *Id.* at 643. The court in *In re Vaughan*, explained its rationale for adopting the holding in *In re Orr*: "If debtors' Chapter 12 case were dismissed without prejudice, they could refile under Chapter 11 without delay, as the exceptions to refiling are not applicable. Nothing would be accomplished by such dismissal and subsequent refiling. Indeed, the change in the petition date which would occur upon refiling would be potentially detrimental to creditors because of the change of date used in computing the preference period."). *In re Vaughan*, 100 B.R. 423, 426 (Bankr. S.D. Ill. 1989).

The Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts* further supports the proposition that the Court may permit conversion from a case under chapter 12 to one under chapter 13.  *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007).   In *Marrama*, the Supreme Court held that a Chapter 7 debtor forfeited his right to proceed under Chapter 13, via conversion of his case, by engaging in prepetition bad-faith conduct.  *Id*.  The Supreme Court rejected *Marrama*'s argument that under § 706(a) of the Bankruptcy Code, he had an absolute right to convert his chapter 7 case to one under chapter 13.  *Id*.  The bankruptcy court had already determined that the debtor's prepetition bad-faith conduct precluded him from relief under chapter 13. The Court of Appeals reasoned that "if a debtor who wishes to convert from Chapter 7 to Chapter 13 has exhibited such "bad faith" that the bankruptcy court would immediately convert the case back to Chapter 7 under § 1307(c), then no purpose would be served by requiring the parties and the court to go through the process of conversion and prompt

reconversion." *Id*. at 380.  The Supreme Court appeared to find this argument persuasive.  *See Id*. at 374-75 ("In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is ***tantamount to a ruling*** that the individual does not qualify as a debtor under Chapter 13.").  The Supreme Court recognized that it would have been pointless to go through the process of converting the case to chapter 13 and then reconverting the case back to chapter 7. *Id*. at 373-74.

In this case, no purpose would be served by requiring a two-step process of (i) conversion from a case under chapter 12 to one under chapter 7 (when the debtor has an absolute right to conversion to chapter 7 absent any bad faith); and (ii) conversion from chapter 7 to chapter 13. Accordingly, the Court finds that sections 1208(a) and 706(c) provide the Court with the authority to grant a debtor's motion to convert a case under chapter 12 to a case under chapter 13.

Although Mr. McLawchlin's counsel has requested the opportunity to have the case converted to chapter 13, a motion has not yet been filed.  The Court will permit Mr. McLawchlin to file a motion to convert his chapter 12 case to chapter 13.   In the motion, Mr. McLawchlin must show that he (i) filed his chapter 12 petition in good faith, (ii) creditors will not be prejudiced by the conversion, and (ii) such conversion would be equitable.  If Mr. McLawchlin fails to file a motion that satisfies these requirements by June 26, 2014, his chapter 12 case will be dismissed without prejudice to file under chapters 7, 11, or 13.

## Conclusion

The Court will enter an Order consistent with this Memorandum Opinion.

SIGNED **June 5, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE